IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIVIAN MOSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-921-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

## I. INTRODUCTION

On October 13, 2011, the plaintiff Vivian Mosley ("Mosley") filed this action against the defendant Michael J. Astrue, Commissioner of Social Security ("Astrue" or "the Commissioner"),[1] for review of the final decision denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") application under title II and XVI of the Social Security Act. (D.I. 20 at 2; D.I. 26 at 5.) Mosley brought this civil action under 42 U.S.C. § 405(g) as incorporated by 42 U.S.C. § 1383(c)(3). (D.I. 20 at 2.)

Mosley initially applied for disability and disability insurance benefits on March 6, 2008. (D.I. 13 at 88–103.) Mosley's claims were denied initially and on reconsideration. Subsequently, Mosley filed a request to have a hearing before an Administrative Law Judge ("ALJ"). (D.I. 13 at 59–60.) Mosley appeared and testified before the ALJ, Melvin D. Benitz,

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on February 13, 2013, after briefing began. Although under Federal Rule of Civil Procedure 25, Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g) no further proceedings are necessary to continue this action.

on May 28, 2009. (*Id.* at 34–41.) On July 10, 2009, the ALJ issued an unfavorable decision against Mosley. (*Id.* at 8–18.) The Appeals Council denied review on September 1, 2010, and the ALJ's determination became final. 20 C.F.R. §§404.955, 404.981, 416.1455, 416.1481 (2012); *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001); (D.I. 13 at 1–4.)

Presently before the court are Mosley's motion for summary judgment and the Commissioner's cross-motion for summary judgment. For the reasons that follow, the court will deny Mosley's motion and grant the Commissioner's cross-motion. The court will affirm the decisions of the ALJ and the Appeals Council. The court's reasoning follows.

## II. BACKGROUND

At the time of her hearing, Mosley was a forty-two year old mother with a high school education through the eleventh grade. (D.I. 13 at 88, 121–22.) Prior to her injury, Mosley worked as a construction laborer/flagger. (*Id.* at 125.) On July 23, 2004, Mosley experienced a sharp pain in her lower back while helping a coworker lift a heavy generator. (*Id.* at 201.) Mosley was able to finish her day at work after the pain subsided but she began to feel increased back pain in the days following the incident. (*Id.* at 201.) Mosley frequently visited doctors for pain related treatment. (*Id.* at 256, 258–62, 282, 292, 302, 311, 316–17, 326, 328, 444, 445, 447, 449, 455, 461, 463, 467, 469, 472, 477, 479, 482, 484, 487, 489, 552–53, 581, 649, 664–66.) In spite of her ongoing back pain, Mosley was able to attend church services, walk for exercise, perform some housework, shop a couple times per week, prepare simple meals, watch television, and help raise a grandchild. (*Id.* at 28, 33, 133–35, 549.)

### A. Mosley's Medical Records

Mosley submitted medical records in support of her DIB and SSI applications. These medical records document the treatment of her lower back injury and are outlined below.

#### 1. Relevant Medical Evidence

As noted, on July 23, 2004, Mosley was injured while helping a coworker lift a generator. (D.I. 13 at 201.) Three days after the incident, on July 26, 2004, Mosley visited her employer's worker compensation carrier's physician, Vaneeta Kubal, M.D. (*Id.*) Dr. Kubal diagnosed Mosley with a lumbar strain and planned to place Mosley on a modified work program. (*Id.*) On July 30, 2004, a week after the incident, Mosley visited her general practitioner Jui-Chih Hsu, M.D. (*Id.* at 206.) Dr. Hsu similarly diagnosed Mosley as having suffered a lumbar sprain. (*Id.* at 158, 206.) In his examination the straight-leg test was positive, but the remainder of the exam produced normal results. (*Id.* at 206.) On August 12, 2004, Mosley received an MRI which showed a small central disc herniation at L5–S1 with mild bilateral neural foraminal narrowing more prominent on the left. (*Id.* at 192.) Mosley was cleared to return to work, with restrictions, during an August 16, 2004, visit to Dr. Hsu. (*Id.* at 191.) On September 9, 2004, Mosley received a physical therapy evaluation by Mr. Patrick W. Stauffer. (*Id.* at 183.) Mr. Stauffer noted Mosley was making good progress and that her pain had decreased to zero while resting and two on a ten point scale while active. (*Id.* at 184.) Mosley received a second MRI on September 22, 2004, which showed a small disc protrusion at T8-9. The remainder of the exam was unremarkable. (*Id.* at 178.)

Mosley continued to visit doctors for her pain issues despite multiple diagnoses of normal and recovered health. (*Id.* at 256, 258–62, 282, 292, 302, 311, 316–17, 326, 328, 444, 445, 447, 449, 455, 461, 463, 467, 469, 472, 477, 479, 482, 484, 487, 489, 552–53, 581, 649, 664–66.)

3

Mosley had approximately one hundred medical appointments between July 30, 2004 and April 22, 2010. (D.I. 27 at 2.) At these appointments she was often prescribed pain killers or given lumbar epidural injections. (D.I. 13 at 256, 258–62, 282, 292, 302, 311, 316–17, 326, 328, 444, 445, 447, 449, 455, 461, 463, 467, 469, 472, 477, 479, 482, 484, 487, 489, 552–53, 581, 649, 664–66.) Dr. Kim, M.D. at the Mid-Atlantic Spine, treated Mosley multiple times for her back pain. On October 11, 2004, Mosley requested Dr. Kim's office complete forms documenting her disability for the Department of Social Services. (*Id.* at 343, 359–60.) Dr. Kim's office denied Mosley's request and questioned whether Mosley was motivated by a secondary gain. (*Id.*)

From 2005 to 2009 Mosley maintained regular monthly visits with Dr. Kim and one of his associates, Lee Irwin, M.D. Physical exams showed no muscle atrophy and a normal gait, however, Drs. Kim and Irwin continued to maintain and manage Mosley's medications and administer nerve blocks. (*Id.* at 256, 258–62, 282, 292, 302, 311, 316–17, 326, 328, 444, 445, 447, 449, 455, 461, 463, 467, 469, 472, 477, 479, 482, 484, 487, 489, 552–53, 581, 649, 664–66.) Dr. Irwin commented in his examination notes, on multiple occasions, that Mosley received good pain relief from treatment and saw no visible signs of swelling. (*Id.* at 552–637.) Additionally, Dr. Irwin noted Mosley had good memory and concentration. (*Id.*)

Mosley was later examined by David Stephens, M.D. for an evaluation requested by her attorney. (*Id.* at 427–30.) In this physical examination Dr. Stephens determined Mosley had healed from a lumbar strain. (*Id.* at 429.) In Dr. Stephens's opinion Mosley could have worked in light duty capacity from the time of her injury until October 18, 2004, and thereafter returned to full-time medium work without restrictions. (*Id.* at 430–31.) Dr. Stephens performed a follow-up exam on Mosley in June 2005. (*Id.* at 386–91.) This exam showed Mosley had a normal stance and gait. (*Id.* at 387.) Dr. Stephens believed Mosley could return to full-time

4

light duty work. (*Id.* at 388, 390.) In October 2007, Mosley asked Dr. Irwin to switch her pain medication because she was applying for jobs and did not want the medication to come up on a urine test. (*Id.* at 459.) In 2008, multiple doctors determined Mosley's condition was normal and that she could perform full-time light duty work. (*Id.* at 444.) In 2009, during Mosley's monthly visits to Dr. Irwin her strength, muscle tone, and gait remained normal even though Mosley continued to complain of pain. (*Id.* at 680, 683, 686, 689, 733, 736, 742, 745.)

### 2. Medical Evidence Post ALJ Decision

As a result of Mosley's continued complaints, Dr. Irwin suggested Mosley try a spinal cord stimulator for pain relief. (*Id.* at 700, 718–19.) The spinal cord stimulator produced seventy percent back pain relief. (*Id.* at 715.) Subsequently, Mosley elected to have a stimulator permanently implanted. (*Id.*) The stimulator was implanted on April 22, 2010. (*Id.* at 706–07.)

### B.     Hearing Testimony

### 1. Mosley's Testimony

Mosley testified she last worked in July 2004. (D.I. 13 at 23.) She testified she experienced a lower back injury while working at Guardian Construction. (*Id.*) Mosley further testified she had been working construction as a flagger for twelve years. (*Id.* at 23–24.) Mosley testified she was receiving injections, nerve ablations, narcotics, and therapy for her lower back injury. (*Id.* at 24.) Mosley claimed to have chronic pain all day with significant swelling coupled with the left side of her body giving out occasionally or locking up. (*Id.* at 24–25, 30.) Mosley testified that she takes pain medication to alleviate her pain, but that the pain medication does not completely alleviate her pain and the medication makes her groggy. (*Id.*) Mosley also asserted that she can only sit for twenty to thirty minutes, stand for forty-five minutes, and lift ten to twenty pounds without pain. (*Id.* at 26, 35.) Mosley stated she cannot work due to

5

constant pain and grogginess. (*Id.* at 27.) Mosley testified to exercising at least two days a week, performing light household chores (*e.g.*, dishes, sweeping, and meal preparation), and attending church weekly. (*Id.* at 25, 28, 33.) In addition, Mosley testified that she spends her days watching television, reading, or sleeping. (*Id.* at 28.)

### 2. Vocational Expert's Testimony

An independent vocational expert ("VE") testified Mosley could return to light duty work. (D.I. 13 at 36.) The VE testified that a person with Mosley's characteristics could perform sedentary work as a security monitor and that there are about 275 security monitor positions within a seventy-five mile radius of Mosley's location. (*Id.*) In addition, the VE testified a person with Mosley's characteristics could also perform work as an envelope addresser/stuffer or information clerk. (*Id.*) There are approximately 475 envelope stuffer positions and 400 information clerk positions locally. (*Id.*) The VE testified that all of the above positions are sedentary and unskilled and available in the national economy. (*Id.*) Further, the VE testified that the individual with Mosley's characteristics could perform light work as a gate tender, mail clerk, or office helper. (*Id.* at 36–37.) Each of the positions would allow the person to sit or stand based on their preference. (*Id.*)

### C. The ALJ's Findings

The ALJ conducted the standard five-step procedure to determine whether plaintiff was disabled. *See infra* III.A. His findings may be summarized as follows:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009.
2. Plaintiff has not engaged in substantial gainful activity since July 23, 2004, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
3. Plaintiff has the following severe impairments: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

6

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526 and 416.926).

5. Plaintiff has the residual capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be able to alternate position between sitting and standing and she must avoid heights and hazardous machinery. She must avoid temperature extremes, she can attend and complete tasks, and she requires simple routine jobs with low stress and low memory.

6. Plaintiff is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Plaintiff was born on June 30, 1967 and was 37 years old, which is defined as a younger individual 18–49, on the alleged disability onset date. (20 CFR 404. 1563 and 416.963).

8. Plaintiff has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 CFR 404.1569, 404.1569(a), and 416.969(a)).

11. Plaintiff has not been under a disability, as defined by the Social Security Act, from July 23, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(D.I. 13 at 13–18.)

### III. LEGAL STANDARDS

#### A. Review of an Agency Decision

A district court's review of an ALJ's decision is limited to whether that decision is supported by substantial evidence. *See Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)); see also 42 U.S.C. § 405(g). If the decision is supported by substantial evidence, the court is bound by the factual findings therein. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). The court does not weigh the evidence or substitute its conclusions for those of the fact finder. *See*

7

*Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984). "Overall this test is deferential, and we grant similar deference to agency inferences from fact if those inferences are supported by substantial evidence, even where this court acting de novo might have reached a different result." *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown*, 845 F.2d at 1213.

Thus, "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (*e.g.*, that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *Id.* Where, for example, countervailing evidence consists primarily of the claimant's subjective complaints of disabling pain or mental disability, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990). Despite the deference due to administrative decisions in disability benefit cases, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

### B. Disability Determination

A person must be disabled under the Social Security Act to receive DIB and SSI. 42 U.S.C. § 423. A person is disabled if they have the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

8

of not less than twelve months. 42 U.S.C. § 423(d)(1)(a). For an individual to be considered "disabled" the Act states (1) an individual is disabled if [s]he is "not only unable to do [her] previous work" but is also unable to "engage in any other kind of substantial gainful work which exists in the national economy" and (2) to define "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *See Facyson v. Barnhart*, 94 F. App'x 110, 112 (3d Cir. 2004) (quoting 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B)).

## IV. DISCUSSION

After considering the record, the parties' submissions and arguments, and the applicable law, the court finds the ALJ's decision is supported by substantial evidence.

### A. The ALJ's Disability Determination

The ALJ must follow the SSA's five-step sequential evaluation process to determine whether a claimant suffers from a physical or mental disability. *Fraser v. Astrue*, 373 F. App'x 222, 224 (3d Cir. 2010). In the determination, the ALJ must consider: (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can "make an adjustment to other work in the national economy." *Id.* (citing 20 C.F.R. §404.1520(a)(4)(i)–(v)). The claimant bears the burden of proof on steps one through four. *Id.* While the Commissioner bears the burden of proof at step five. *Id.*

#### 1. Step One

At step one, the ALJ must determine the claimant's current work activity, more

9

specifically, whether the claimant is engaged in substantial gainful activity. In this case, both parties agree the claimant has not engaged in substantial gainful activity since July 23, 2004.

### 2. Step Two

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c); 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§404.1523; 416.923.

Here, the ALJ found that Mosley had a "severe" impairment—degenerative disc disease. The ALJ based this finding on the objective medical evidence established by an August 2004 MRI that showed a small central herniated disc at L5–S1 with mild bilateral neural foraminal narrowing more prominent on the left. (*See* D.I. 13 at 192.) Additionally, the finding was based on a September 2004 MRI of the thoracic spine showing a small disc protrusion at T8–9. (*Id.* at 178.)

### 3. Step Three

At step three, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 CFR § 404, Subpart P, app. 1. 20 C.F.R. §404.1520(d), 404.1525, 404.1526, 416.925, and 416.926. If the claimant's impairment meets or medically equals the criteria of a listing and meets the durational requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step. An impairment matches a listing if it meets all of the specified medical criteria; an impairment that manifests only some of these criteria, no matter how severe, does not qualify. *See Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

10

Here, the ALJ found that Mosley does not have an impairment that meets or medically equals one of the listed impairments. The ALJ considered the listing in 1.04. The ALJ correctly determined that Mosley does not have the neurological deficits required by the listing.

### 4. Step Four

In step four, the ALJ determined that the claimant is unable to perform past relevant work as a construction laborer/flagger. The ALJ determined that Mosley's past relevant work was light work, but it did not allow her to avoid hazardous machinery or temperature extremes. Substantial evidence supports this determination.

### 5. Step Five

At step five, the ALJ determines if there are a significant number of jobs in the national economy for individuals with the claimant's age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(g) and 416.920(g). In establishing the claimant's RFC, the ALJ must pose a hypothetical which accurately conveys all of the claimant's established limitations to an independent vocational expert. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). During step five, a portion of the burden shifts to the Social Security Administration because it is responsible for providing evidence that demonstrates what other work exists in significant numbers in the national economy that claimant can perform.

Here, the ALJ correctly determined Mosley's RFC as able to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with restrictions. The ALJ determined Mosley must have a position that allows her to alternate between sitting and standing throughout the day. (*Id.* at 35.) Additionally, the ALJ found that Mosley must avoid work environments that include exposure to heights, hazardous machinery, and extreme temperatures. (*Id.*) Further, the ALJ

11

determined that Mosley could attend to tasks and complete schedules, and she requires simple, routine jobs with low stress and low memory. (*Id.*)

The VE testified based on Mosley's age, education, work experience, and RFC that there are jobs available in the national economy. (*Id.* at 36.) Mosley is eligible to be a gate tender, mail clerk, office helper, security monitor, envelope stuffer, and information clerk. (*Id.* at 18.) Based on the VE's testimony, the ALJ concluded that Mosley is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*)

### B. The ALJ's Credibility Determination

The ALJ is the factfinder and credibility determinations are the ALJ's alone. *See Pysher v. Apfel*, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). The district court may only disturb the determinations of the ALJ if they are not supported by substantial evidence. *Id.* The ALJ is entitled to reject evidence but must explain why that evidence has been rejected. *See Cotter v. Harris*, 642 F.2d 700, 705–06 (3d. Cir. 1981).

When considering evidence of subjective complaints of pain the ALJ reviews the evidence through a two-part test. *See Williams*, 970 F.2d at 1186 (citing 42 U.S.C. § 423(d)(3)). First, medical or laboratory records must be presented to show the claimant has a medical impairment which could reasonably be expected to produce the claimant's pain. 20 C.F.R. §§ 404.1529(b) and 416.929(b); *Williams*, 970 F.2d at 1186. Second, if the impairment is established, the intensity, persistence, and limiting effects of the symptoms must be reviewed to determine the extent to which the symptoms limit a person's ability to perform basic work functions. 20 C.F.R. §§ 404.1529(c) and 416.929(c); *Williams*, 970 F.2d at 1186 (citing *Green v. Schweiker*, 749 F.2d 1066, 1069–70 (3d Cir. 1984)). If there is no objective medical proof of the

symptoms the ALJ must make a credibility determination based on the entire record. *Williams*, 970 F.2d at 1186 (citing *Green v. Schweiker*, 749 F.2d 1066, 1069–70 (3d Cir. 1984)).

Mosley argues "the ALJ failed to materially follow the requirements of SSR 96-7p and that a reasonable personal would not accept the ALJ's explanation for rejecting her statements." (D.I. 20 at 24.) The ALJ determined Mosley's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not of such magnitude as to be inconsistent with the residual functional capacity assessment. (D.I. 13 at 16.)

The court concludes that there is substantial evidence to support the ALJ's credibility determination. After his review the ALJ rejected Mosley's claims as to the degree of her limitation. The medical evidence shows Mosley experienced a lumber strain after lifting a heavy generator at work. (*Id.* at 88.) The medical evidence further shows Mosley received good results from physical therapy, medications and treatments, and continued to produce normal physical exams with multiple doctors. (*Id.* at 184, 444, 552–637.) Drs. Hsu, Stephens, and Irwin all released Mosley to light work as early as August 2004. (*Id.* at 191, 388, 390, 430–31, 444.) Dr. Irwin noted that Mosley had good memory and was able to concentrate well during his examinations. (*Id.* at 552–637.) The credibility of Mosley's testimony is undermined by both the objective medical evidence and her testimony concerning her continued activities. Mosley testified that she frequently visited doctors, attended church services, walked for exercise, performed light housework, shopped a couple times per week, prepared simple meals, watched television, and helped raise her grandchild. (*Id.* at 28, 33, 133–35, 549.) Further, Mosley spent time looking for a job in 2007. (*Id.* at 459.)

The ALJ gave controlling weight to the opinions of Mosley's treating physicians in his credibility determination because the doctors' opinions were supported by objective physical

13

findings. (*Id.* at 16.) Specifically, the ALJ considered the multiple physical exams by multiple doctors from August 2004 to April 2010 during which Mosley was examined and showed no signs—and reported no symptoms—of debilitating pain. (*Id.* at 14–16.) Put simply, the ALJ gave Mosley's testimony little weight because it was not credible in light of the medical evidence, her interactions with medical professionals, continued activities, and ongoing employment search. *See* SSR 96–7p; (D.I. 13 at 16.) The court concludes that the ALJ's credibility determination was supported by substantial evidence.

### C. Request for Sentence Six Remand

The court may remand under sentence six of section 405(g) of the Act if there is new evidence of material significance the ALJ has not previously seen. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). There must be good cause as to why the evidence was not previously presented. *Id.* To be material the new evidence must be relevant, probative, and have a reasonable possibility that if it had been presented the outcome would have been different. *Szubak v. Sec'y of Health and Human Serv.*, 745 F.2d 831, 833 (3d Cir. 1984).

Mosley argues the spinal cord stimulator evidence is new evidence which should be considered in a sentence six remand. (*See* D.I. 20 at 24–27.) The Commissioner argues Mosley has failed to prove that the spinal cord stimulator evidence is material. (D.I. 26 at 22.)

Here, it is undisputed that the evidence at issue could not have been presented at the original hearing. The spinal cord stimulator was implanted after the hearing, thus the evidence is new. *See Szubak*, 745 F.2d at 833. The court concludes that while this evidence is new it is not material. Material evidence must have the reasonable possibility of changing the ALJ's decision. *Id.* For the spinal cord stimulator evidence to be material it would need to corroborate Mosley's pain testimony. *See id.* Here, the implantation provided Mosley with even greater pain relief.

14

(D.I. 13 at 75.) Rather than demonstrating disability, such successful treatment instead shows that Mosley received even more pain relief after the ALJ's decision as a result of the implant. Therefore, a sentence six remand would not be appropriate as the new evidence does not create a reasonable possibility of changing the ALJ's decision.

## V. CONCLUSION

The court concludes that the ALJ's decision was supported by substantial evidence. Mosley's complaints of pain were not supported by objective medical evidence and the court concludes substantial evidence supports the ALJ's finding she could perform multiple light duty positions. The court determines a sentence six remand is not warranted in light of the asserted new evidence. Thus, the court will grant the Commissioner's motion for summary judgment and deny Mosley's motion for summary judgment.

Dated: June 23, 2015

UNITED STATES DISTRICT JUDGE